**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CHRISTINE BRYANT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-15-1151-HE** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Christine Bryant brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Chief United States District Judge Joe Heaton has referred this matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R. _"). The parties have briefed their positions, and the case is ready for decision. For the reasons stated herein, it is recommended that the Commissioner's decision be affirmed.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her applications for DIB and SSI on September 13, 2012, alleging a disability onset date of August 20, 2011. R. 176-85, 211-12. Following

denial of her applications initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on March 4, 2014. R. 38-63, 85-86, 111-19. In addition to Plaintiff, a vocational expert testified at the hearing. *See* R. 38-61. The ALJ issued an unfavorable decision on June 30, 2014. R. 15-37.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 20, 2011. R. 20. At step two, the ALJ determined that Plaintiff had the severe impairments of: (i) osteoarthrosis and allied disorders; and (ii) substance abuse/dependence. R. 20-27. The ALJ also stated that Plaintiff had "medically determinable mental impairments of affective disorder and substance addiction disorders" but these impairments were "nonsevere." R. 27. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 27-28.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 28-32. The ALJ found:

> [Plaintiff] has the [RFC] to perform sedentary work . . . except lift/carry/push/pull no more than 10 pounds occasionally; sit for a total of less than 6 hours in an 8 hour workday; stand for a total of less than 2 hours in an 8 hour workday; and walk for a total of less than 2 hours a day; can perform simple and some complex tasks (functional limits due to physical rather than mental impairments); avoid gases, dust, pollution and smoke.

R. 28.[1]

At step four, the ALJ found that Plaintiff's RFC allowed her to perform her past relevant work as a customer service representative. R. 32. Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 32.

Plaintiff's request for review by the Appeals Council was denied. R. 1-4. The unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270

---

[1] "Sedentary work" is defined in the relevant regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

(10th Cir. 2004) (internal quotation marks omitted).  The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met."  *Wall*, 561 F.3d at 1052 (internal quotation marks omitted).  While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff raises multiple contentions of error, addressed in turn below.

I.     The ALJ's Assessment of Dr. Mercer's Opinion

Plaintiff's primary basis for seeking reversal is the ALJ's alleged error in assessing and weighing an opinion of Plaintiff's treating physician, Mary Kathryn Mercer, DO.  Plaintiff argues that this error rendered the RFC determination unsupported by substantial evidence.  *See* Pl.'s Br. (Doc. No. 14) at 2-5.  The undersigned disagrees.

*A. The Relevant Record and the Written Decision*

The record reflects that Plaintiff was treated by Dr. Mercer on numerous occasions between November 2011 and February 2014 for a variety of physical and mental ailments.  *See* R. 449-548 (Ex. 4F), 648-897 (Ex. 15F).  On March 27, 2013, Dr. Mercer completed a Physical Residual Functional Capacity form ("PRFC") regarding Plaintiff's limitations.  R. 591-96 (Ex. 11F).  In the PRFC, Dr. Mercer noted Plaintiff's diagnoses of depression and arthritis, as well as her alleged impairments of chronic pain and anxiety.  R. 591.  With respect to exertional limitations, Dr. Mercer checked boxes indicating that

Plaintiff could: occasionally and frequently lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) less than 2 hours in an 8-hour workday; sit (with normal breaks) less than about 6 hours in an 8-hour workday; and was "limited" in her upper extremities as to pushing and/or pulling. R. 591-92. With respect to postural limitations, Dr. Mercer opined that Plaintiff could occasionally climb, balance, or stoop but could never kneel, crouch, or crawl. R. 592. Dr. Mercer found no visual or communicative limitations. R. 593-94. Finally, Dr. Mercer opined that Plaintiff should "avoid all unlimited exposure" to extreme cold and "avoid even moderate exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." or to hazards such as machinery and heights. R. 594. Dr. Mercer's check-the-box opinions are accompanied by no explanations or citations to evidence even though the form specifically instructed her to "describe" or "explain" the particular functional limitations that she identified. *See* R. 592, 594, 595-96.

At step two of his written decision, the ALJ gave a detailed summary of Dr. Mercer's treatment records for Plaintiff. R. 26 (citing Ex. 15F). The ALJ also identified Dr. Mercer as Plaintiff's treating physician and enumerated Dr. Mercer's PRFC diagnoses and specific opinions. R. 24 (citing Ex. 11F). In his RFC determination, the ALJ stated: "Little weight is given to Dr. Mercer's residual functional capacity assessment at Exhibit 11F, as it simpl[y] is not supported by other objective evidence in the record." R. 31.

*B. The Treating Physician Rule*

By regulation, a treating physician's medical opinion generally is given "more weight" than that of a nontreating source. 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). Under Tenth Circuit authority, the evaluation of a treating physician's opinion follows a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The medical opinion of a treating physician must be given controlling weight if it is both well-supported by medically acceptable clinical or laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Second, if the ALJ has determined that the medical opinion of a treating physician is not entitled to controlling weight, the ALJ must determine what lesser weight should be afforded the opinion. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300. The determination of how much deference to afford a treating physician opinion should be made in view of a prescribed set of regulatory factors, *Watkins*, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), but "[t]he ALJ is not required to mechanically apply all of these factors in a given case." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016). Finally, if an ALJ rejects a treating source opinion

completely, he or she "must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

### C. *Discussion*

Plaintiff objects that the ALJ's assignment of "little weight" to Dr. Mercer's PRFC amounted to a "complete[]" "reject[ion]" of that opinion, for which the ALJ was required—but failed—to provide "specific, legitimate reasons."[2] Pl.'s Br. at 2-5 (internal quotation marks omitted); *see Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). The Commissioner responds that the ALJ's stated reason for assigning little weight to the PRFC—a lack of support in the remainder of the record—is supported by substantial evidence. *See* Def.'s Br. (Doc. No. 19) at 8-9. Plaintiff replies that acceptance of the Commissioner's rationale would require the Court to improperly rely upon explanations not provided by the ALJ and thereby "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see* Pl.'s Reply (Doc. No. 21) at 4.

The undersigned need not consider the Commissioner's proffered basis for upholding the ALJ's decision, however. As outlined below, Plaintiff fails to specify—or establish—any physical functional limitation noted in Dr. Mercer's PRFC that the ALJ improperly omitted from the RFC determination. *See* Pl.'s Br. at 2-5; R. 28.

---

[2] Plaintiff raises no objection to the ALJ's consideration of Dr. Mercer's treatment records or of any opinions other than those contained in the PRFC.

First, each physical limitation that was included in the RFC determination by the ALJ comports with an analogous limitation found by Dr. Mercer in the PRFC. As noted above, the ALJ determined that Plaintiff retained the ability to:

- "lift/carry/push/pull no more than 10 pounds occasionally,"

    o which is more restrictive than Dr. Mercer's opinion that Plaintiff could occasionally and *frequently* lift and/or carry less than 10 pounds and was "limited" in her upper extremities as to pushing and/or pulling;

- "sit for a total of less than 6 hours in an 8 hour workday,"

    o which is consistent with Dr. Mercer's opinion that Plaintiff could sit for at a total of less than about 6 hours in an 8-hour workday with normal breaks;

- "stand for a total of less than 2 hours in an 8 hour workday,"

    o which is consistent with Dr. Mercer's opinion that Plaintiff could stand and/or walk for less than 2 hours in an 8-hour workday with normal breaks;

- "walk for a total of less than 2 hours a day,"

    o which is consistent with Dr. Mercer's opinion that Plaintiff could stand and/or walk for less than 2 hours in an 8-hour workday with normal breaks; and

- "avoid gases, dust, pollution and smoke,"

    o which is consistent with Dr. Mercer's opinion that Plaintiff must "avoid even moderate exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc."

*Compare* R. 28, *with* R. 591-92, 594.

Thus, the relevant physical limitations adopted by the ALJ in the RFC determination were either consistent with, or more restrictive than, those specified by Dr. Mercer in the allegedly "rejected" PRFC. The ALJ therefore did not reject those limitations, and his failure to supply the "specific, legitimate reasons" required for such a rejection does not violate the treating physician rule or undermine the ALJ's step-four determinations. *See Watkins*, 350 F.3d at 1301; R. 28; *cf. Howard v. Barnhart*, 379 F.3d

945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). And because the specific limitations Dr. Mercer assigned to Plaintiff in the PRFC "were not inconsistent with the limitations the ALJ placed in [Plaintiff's] RFC," "[a]ny error in failing to specify the weight given to the opinion was harmless." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012).

Second, as for the remaining limitations that appeared in Dr. Mercer's PRFC but were *omitted* from the RFC determination—namely, that Plaintiff could only occasionally climb, balance, or stoop; could never kneel, crouch, or crawl; must "avoid all unlimited exposure" to extreme cold; and must "avoid even moderate exposure" to hazards such as machinery and heights (R. 592, 594)—any error in failing to provide a "specific, legitimate reason" for rejecting those limitations is likewise harmless because there is no discrepancy between any of those limitations and the requirements of the job to which the ALJ found Plaintiff was able to return. *See* R. 32, 58-59. The ALJ found that Plaintiff could return to her sedentary, skilled job as a customer service representative, the specifications for which are set forth in the *Dictionary of Occupational Titles* ("DOT") (4th rev. ed. 1991). R. 32, 58-59; *see* DOT 241.367-014 (Customer Complaint Clerk). The relevant DOT listing specifies that the occupation in question requires *no* climbing, balancing, stooping, kneeling, crouching, crawling, exposure to extreme cold, or exposure to moving mechanical parts or high exposed places. *See* DOT 241.367-014 (finding these activities and conditions "Not Present"). Because there was no inconsistency between the limitations outlined in the PRFC and

9

Plaintiff being able to perform the job identified by the ALJ, any error by the ALJ in "rejecting" or not explaining his weighing of these opinions was harmless and did not undermine the ALJ's step-four determination. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."); *Lane v. Colvin*, 643 F. App'x 766, 768-70 (10th Cir. 2016) (holding that ALJ's failure to include a physician's limitation in the claimant's RFC was harmless error "because the capacity required to do the jobs identified by the ALJ is not contrary to [the physician's] limitations"); *cf. Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (noting that ALJ must discuss rejected evidence if the evidence is "significantly probative").

As outlined above, each limitation in Dr. Mercer's PRFC was either adopted by the ALJ or was inapplicable to the job identified for Plaintiff by the ALJ. "Giving greater weight to" Dr. Mercer's opinion "would not have helped her." *Keyes-Zachary*, 695 F.3d at 1163. Plaintiff therefore has not shown any reversible error or lack of substantial evidence in the ALJ's consideration of the cited opinions in formulating Plaintiff's RFC or in finding that Plaintiff could return to her past relevant work.

II.     "The Nonsevere Errors"

Plaintiff next sets forth a disjointed list of overlapping claims of error, developed

to varying degrees.  *See* Pl.'s Br. at 5-12.  Although the undersigned addresses those

arguments directly raised,

> "perfunctory complaints fail to frame and develop an issue sufficient to
> invoke [judicial] review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th
> Cir. 1994).  This Court cannot address contentions for which a claimant
> fails to develop the factual and legal bases for his arguments. *See Threet v.
> Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on
> claimant's behalf when argument on an issue is "insufficiently developed").
> On judicial review, "it is not our role to shore up [Plaintiff's] argument for
> him." *Chrismon v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013)
> (citation omitted).

*Woods v. Colvin*, No. CIV-13-763-HE, 2014 WL 2801301, at *2 (W.D. Okla. May 28,

2014) (R. & R.) (alterations in original), *adopted*, 2014 WL 2801304 (W.D. Okla. June

19, 2014).

A. *Plaintiff's Gastrointestinal Condition*

Plaintiff argues that the ALJ's failure to specifically find her "gastrointestinal

condition" to be a medically determinable impairment was "a huge miss" in light of the

evidence in the record.  Pl.'s Br. at 5-6.

The record reflects that Plaintiff received significant treatment for gastrointestinal

and gynecological issues during the relevant period, including: total hysterectomy and

bilateral oophorectomy with excision of endometrial mass and abdominal wall repair

(December 2011); abdominal pain followed by small bowel resection (January 2012);

and incisional hernia repair with adhesion removal (June 2012).  *See* R. 303-425.

Following these procedures, Plaintiff at times sought treatment for pain in her pelvis,

back, or legs, as well as constipation. *See, e.g.* R. 431-48, 458-59, 549, 597-600. In November 2012, Plaintiff had a colonoscopy that showed internal nonbleeding hemorrhoids; afterwards, she underwent three hemorrhoidectomy banding procedures. R. 563-67, 580-88.

Even assuming that the ALJ erred in failing to find Plaintiff's "gastrointestinal condition" to be a medically determinable impairment,[3] however, the Tenth Circuit has stated that "a failure to find an impairment medically determinable is essentially a step-four error," which can "be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)). Here, the written decision reflects that the ALJ considered evidence and testimony regarding Plaintiff's gastrointestinal issues in assessing her RFC. *See, e.g.*, R. 21, 22, 23, 24-26, 28, 29-30; *cf. Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (upholding ALJ's consideration of certain impairments in assessing claimant's RFC where ALJ discussed the impairments "in detail" at step two and stated that "he took into account 'the entire record' and 'all symptoms' in determining" the RFC). The ALJ's discussion of Plaintiff's gastrointestinal condition therefore "satisfied the ALJ's obligation at step four" with respect to that condition. *Wells*, 727 F.3d at 1069.

---

[3] In grouping together all of her "gastrointestinal issues," Plaintiff does not articulate the precise condition she contends should have been found to be a medically determinable impairment or impairments. Pl.'s Br. at 5, 6. Nor does Plaintiff "explain how this so-called impairment satisfied the requirements of 20 C.F.R. §§ 404.1509, 416.909." *Brewer v. Colvin*, No. CIV-13-420-R, 2014 WL 1612652, at *6 (W.D. Okla. Apr. 22, 2014); *see also* 20 C.F.R. §§ 404.1508, 416.908.

Further, Plaintiff's unexplained reference to the "significance" of Plaintiff's testimony regarding her continuing bowel issues fails to demonstrate that the ALJ improperly omitted any functional limitation associated with such issues. Pl.'s Br. at 6. Plaintiff did testify regarding her stomach pain, constipation, and bowel issues, R. 48, 51, 54-55, 56, and the ALJ discussed that testimony in the written decision, R. 29-30. The ALJ, however, expressly found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of" her symptoms and her inability to work were not entirely credible for multiple reasons. R. 29-31. Plaintiff does not challenge that credibility determination in this appeal.

For all of these reasons, any error in the ALJ's consideration of Plaintiff's gastrointestinal condition is harmless and does not undermine the ALJ's RFC determination. *See Ray*, 657 F. App'x at 734-35.

B. *Plaintiff's Obesity*

Plaintiff contends on appeal that the ALJ's analysis of Plaintiff's obesity was inadequate. *See* Pl.'s Br. at 6. But Plaintiff did not "testify that [her] weight contributed to [her] inability to engage in activities in any way"; nor does Plaintiff challenge the ALJ's failure to find that her obesity was a medically determinable impairment. *Briggs v. Astrue*, 221 F. App'x 767, 771 (10th Cir. 2007) (internal quotation marks omitted); *see* R. 46-57. Moreover, Plaintiff points to no omitted functional limitation that was necessary in light of her obesity, cites no evidence of her obesity's impact, and "has not shown that her obesity alone, or in combination with . . . impairments, resulted in any further limitations" or precluded her from performing sedentary work. *Smith v. Colvin*, 625 F.

App'x 896, 899 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)); *see also Callicoatt v. Astrue*, 296 F. App'x 700, 702 (10th Cir. 2008) (rejecting challenge to ALJ's failure to consider claimant's obesity where claimant pointed to no evidence or testimony "showing that her obesity exacerbated her other impairments"); *Woods*, 2014 WL 2801301, at *5 (rejecting claimant's challenge to ALJ's consideration of obesity where claimant "fail[ed] to state what 'sufficient limitations' the ALJ *should* have included").

In the written decision, the ALJ relied upon and specifically discussed evidence reflecting Plaintiff's obesity. *See, e.g.*, R. 21, 22, 24, 25, 26. Having failed to raise a challenge to the ALJ's discussion that would be meaningful under the authorities noted above, Plaintiff's argument does no more than complain that the ALJ should have been "required to note the absence of any evidence that [Plaintiff's] obesity resulted in additional functional limitations or exacerbated any other impairments"—a proposition that has been rejected by the Tenth Circuit. *See Smith*, 625 F. App'x at 899. Plaintiff has not shown that the ALJ erred in considering Plaintiff's obesity.

## C. *Plaintiff's Substance Addiction*

Plaintiff next objects that the ALJ inconsistently found at step two that Plaintiff's "substance abuse/dependence" is a severe impairment and that her "substance addiction disorders" are nonsevere. *Compare* R. 20, *with* R. 27. According to Plaintiff, this discrepancy impermissibly requires the Court "to reweigh the evidence to determine the severity of substance addiction." Pl.'s Br. at 6.

The cited statements are facially inconsistent. But even upon interpreting this inconsistency in the manner most adverse to Plaintiff—i.e., accepting that the ALJ at step two found that Plaintiff's substance addiction was a nonsevere impairment—Plaintiff fails to explain how this finding was a prejudicial error. Despite the inconsistent labels, the ALJ discussed in detail the evidence and testimony regarding Plaintiff's substance addiction impairment, as well as his assessment thereof, at both step two and in determining the RFC. *See* R. 20-21, 22, 23, 24, 25, 26, 29, 31. Plaintiff objects to the severe/nonsevere inconsistency but does not directly challenge the *substance* of the ALJ's determination with respect to her addiction or cite evidence to demonstrate that her addiction prevented her from working. *See* Pl.'s Br. at 6; *cf. Harris v. Astrue*, 496 F. App'x 816, 819 n.1 (10th Cir. 2012) ("The burden to show prejudicial error on appeal rests with [the claimant]." (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

As a result, Plaintiff does not show that any finding that her substance addiction was a nonsevere impairment actually affected the disability determination. "[A]n error in determining an impairment's severity at step two . . . is not reversible if the ALJ proceeds further to evaluate other impairments." *Ray*, 657 F. App'x at 734 (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016)); *cf. Keyes-Zachary*, 695 F.3d at 1166 ("Where . . . we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). Because the ALJ discussed his assessment of Plaintiff's substance addiction impairment both at step two and in determining the

RFC, and Plaintiff has not shown that the ALJ's RFC determination erroneously omitted any limitation related to substance addiction, any error at step two was not prejudicial.

In other words, Plaintiff has not demonstrated that the inconsistency in the ALJ's description of his step-two finding undermines the disability decision or requires the Court to improperly reweigh evidence for its review. The ALJ's step-two inconsistency is harmless in light of the ALJ's subsequent discussion and therefore does not require reversal. *See Keyes-Zachary*, 695 F.3d at 1166.

### D. Plaintiff's Mental Impairment

Plaintiff next argues that the ALJ erred in his consideration of Plaintiff's mental impairment of affective disorder.

#### i. The ALJ's Step-Two Decision and RFC Determination

Plaintiff argues that the ALJ erred at step two in finding Plaintiff's affective disorder to be a nonsevere impairment. *See* Pl.'s Br. at 7, 8-10, 11. Plaintiff additionally argues that the ALJ erred by omitting any limitations from the RFC determination based upon Plaintiff's mental impairment.[4] *See* Pl.'s Br. at 7, 9, 10-11.

As noted above, "an error in determining an impairment's severity at step two . . . is not reversible" when "the ALJ proceeds further to evaluate other impairments." *Ray*, 657 F. App'x at 734. Plaintiff argues that the ALJ's error here was not harmless because the ALJ failed to consider Plaintiff's mental impairment in reaching the RFC. *See* Pl.'s

---

[4] Although the ALJ specified that he was limiting Plaintiff to "simple and some complex tasks" "due to physical rather than mental impairments," R. 28, the Tenth Circuit has noted that such a limitation "can adequately account for a claimant's mental impairments, depending on their nature." *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016); *accord Beasley v. Colvin*, 520 F. App'x 748, 755 (10th Cir. 2013).

Br. at 8-9. This argument is entirely refuted by the text of the written decision, in which the ALJ specifically considered evidence and testimony regarding Plaintiff's mental condition when analyzing Plaintiff's RFC. *See* R. 29-30, 30-31 (discussing Plaintiff's testimony and statements as to her counseling, concentration, and handling of stress and changes), 30 (discussing Plaintiff's mother's statements as to Plaintiff's functional abilities and handling of stress), 31 (discussing consulting psychologist Dr. Stephanie Crall's opinions as to Plaintiff's concentration, mood, and affect).

Plaintiff does offer specific criticism of the ALJ's step-two analysis. In explaining his step-two determination, the ALJ discussed each of the "Paragraph B" criteria in detail and cited evidence supporting his finding of only "mild limitation[s]" in three functional areas and no episodes of decompensation, which in turn supported his finding that Plaintiff's mental impairment was nonsevere. *See* R. 27 (citing 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe . . . ."); *id.* § 416.920a(d)(1) (same)); *see also* 20 C.F.R. pt. 404, subpart P app. 1, § 12.00C (defining the four "Paragraph B" criteria: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). As to these findings, Plaintiff asserts:

> [The ALJ's] mental health reasoning was that, wait again, there was no reasoning. *See* AR 27. While he listed his part B analysis there was no reasoning as to why it was a nonsevere impairment. He didn't even mention what doctor's in the mental health area should receive any weight, but his mild part B findings lined up with the agency doctors. *See* AR 27, 68.

> . . . .
>
> The ALJ lists a relative few Activities of Daily Living (ADL's), as justification for his "mild" finding on mental health. AR 27. That is not enough. The problem also lies within the fact that the ALJ failed to list anxiety attacks as one of [Plaintiff's] ADL's. They are completely overlooked. What about how her pain interferes with her daily activities?
>
> . . . .
>
> Even worse, the ALJ listed that she was in continuing counseling at COPE and was failing at that as well. AR 25. All of these signs and the ALJ still finds her mental health nonsevere.

Pl.'s Br. at 7, 8, 10.

This criticism is not sufficient to establish that the ALJ's step-two finding of nonseverity was based on legal error or unsupported by substantial evidence, much less that the same would be true of the ALJ's subsequent finding of no mental limitations in the RFC. In the above-quoted portion of her brief, Plaintiff cites to (i) the "Paragraph B" page of the ALJ's written decision, R. 27; (ii) a single page of the explanation that accompanied the state agency's denial of benefits, in which a consulting psychologist likewise found three areas of mild limitation and no episodes of decompensation, R. 68; and (iii) a page of the written decision where the ALJ discussed treatment records from Plaintiff's counseling at COPE, Inc., R. 25. *See also* R. 68-69, 285-99, 621-43. Plaintiff does not provide citation to record evidence of the allegedly "overlooked" anxiety attacks and medical evidence or an explanation for the propositions that anxiety attacks should be "list[ed] as one of [Plaintiff's] ADLs" and that Plaintiff's "failing" at counseling rendered the ALJ's nonseverity finding erroneous or unsupported. Pl.'s Br. at 8, 10. And, as to "[w]hat about how her pain interferes with her daily activities," Plaintiff does not provide the Court with her preferred answer to her open-ended question and does not

challenge the ALJ's finding that Plaintiff's complaints regarding her symptoms, including pain, were not entirely credible. *See* R. 28-31.

Plaintiff's record citations and conclusory contentions "lack[] the specificity required to support [her] argument" and do not demonstrate that Plaintiff's mental impairment "significantly limits" her "mental ability to do basic work activities." *See* Pl.'s Br. at 8; 20 C.F.R. §§ 404.1520(c), 416.920(c); *Brown v. Colvin*, No. CIV-12-1272-HE, 2014 WL 903174, at *5 (W.D. Okla. Mar. 7, 2014) (citing *Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (noting that the court "will not comb through the record where counsel has not provided specific references tied to an argument")). Because Plaintiff has not shown that the omission of mental limitations from the RFC determination was erroneous or not supported by substantial evidence, neither her assertion of error at step two nor her challenge to the RFC determination supports reversal.

### ii. Dr. Haissam Al-Khouri and Dr. Adonis Al-Botros

Plaintiff asserts that the ALJ erred in failing to identify the weight assigned to the opinions of "treating psychiatrists" Dr. Al-Khouri and Dr. Al-Botros and to provide specific, legitimate reasons for implicitly rejecting their opinions. *See* Pl.'s Br. at 5, 7. As noted by the Commissioner, however, the record does not reflect that these doctors were "treating" psychiatrists as that term is defined in the applicable regulations. *See* 20 C.F.R. §§ 404.1502 (defining "treating source" as one who has or had "an ongoing treatment relationship" with the claimant), 416.902 (same); Def.'s Br. at 9.

Plaintiff saw Dr. Al-Khouri only one time, on February 11, 2013. *See* R. 577-79 (Ex. 9F). Plaintiff saw Dr. Al-Botros only twice, on December 17, 2013, and on January 14, 2014. *See* R. 644-47 (Ex. 14F). Therefore the record does not plainly reflect an "ongoing" treatment relationship with either of these psychiatrists, and Plaintiff offers no support for labeling them as such. *See* Pl.'s Br. at 5, 7; *cf.* 20 C.F.R. §§ 404.1502 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is . . . based . . . solely on your need to obtain a report in support of your claim for disability."), 416.902 (same); *Doyal*, 331 F.3d at 764 (rejecting argument that ALJ was required to give a physician's opinion controlling weight, or to provide specific reasons for not giving it controlling weight, when the claimant had seen the physician only twice in seven years and "[t]e ALJ could reasonably have concluded that [the physician's] report fulfilled no purpose other than to support a claim of disability").

Although Dr. Al-Khouri and Dr. Al-Botros have not been shown to be treating sources, the ALJ was still required to consider their opinions as issued by acceptable medical sources and, if he rejected these opinions, to give "'specific legitimate reasons'" for doing so. *Chapo*, 682 F.3d at 1291 (quoting *Doyal*, 331 F.3d at 764). Here, the ALJ discussed the two psychiatrists' opinions in detail. *See* R. 24 (citing Ex. 9F), 25 (citing Ex. 14F). The ALJ also specifically stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." R. 28.

Plaintiff objects that the ALJ "rejected" these psychiatrists' diagnoses of mental health conditions (i.e., depression (Drs. Al-Khouri and Al-Botros) and anxiety (Dr. Al-

Khouri)), as well as Dr. Al-Khouri's assessment of a Global Assessment of Functioning ("GAF") score of 45, and instead "tacit[ly] sid[ed] with" unidentified "Agency doctors." Pl.'s Br. at 7; *see* R. 577-78, 645, 647. With respect to the diagnosis of depression, the ALJ expressly found that Plaintiff had the medically determinable impairment of affective disorder and considered the "mild" functional limitations caused by that mental impairment in evaluating the RFC. *See* R. 27, 29-31.[5] With respect to the diagnosis of generalized anxiety disorder, Plaintiff points to no evidence—beyond Dr. Al-Khouri's isolated diagnosis—to support the propositions that Plaintiff's anxiety was a medically determinable impairment, that this impairment was severe in nature and "should have been part of her RFC," or that the omission of any (unidentified) functional limitations resulted in an RFC unsupported by substantial evidence. *See* Pl.'s Br. at 5, 7, 10-11; *Walters v. Colvin*, 604 F. App'x 643, 648 (10th Cir. 2015) (noting that merely having a condition is not determinative of a disability; rather, the condition must alone or in combination render the claimant unable to work); *Lankford v. Colvin*, 612 F. App'x 496, 499 (10th Cir. 2015) (noting that "fleeting references" to a claimant's anxiety, including one doctor's note "diagnosing anxiety, apparently based on [the claimant's] own report of feeling stress and anxiety," were insufficient "to establish a medically determinable impairment"); 20 C.F.R. §§ 404.1508, .1509, 416.908, .909; *cf.* SSR 96-8p, 1996 WL

---

[5] "Affective disorder" refers to mental disorders characterized by a mood disturbance, which include depression. *See* 20 C.F.R. pt. 404, subpart P app. 1, § 12.04; *Stedman's Medical Dictionary* 567, 569 (28th ed. 2006). In arguing that her mental impairment was severe in nature, Plaintiff cites Listing 12.04, but she does not challenge the ALJ's determination that Plaintiff's mental impairments did not meet or equal Listing 12.04. *See* Pl.'s Br. at 11; R. 27-28.

374184, at *1 (July 2, 1996) ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."). Nor does Plaintiff point to evidence or testimony showing that an impairment of anxiety caused any functional limitations not addressed in the analysis of her affective disorder.

Regarding Dr. Al-Khouri's assignment of a GAF score of 45, R. 578, Plaintiff likewise has not shown an improper rejection by the ALJ. The ALJ expressly considered the score in the written decision. *See* R. 24.[6] And a single low GAF score does not, "standing alone," "evidence an impairment seriously interfering with claimant's ability to work." *Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003). Dr. Al-Khouri's opinion as a whole "did not indicate that [Plaintiff] could not work": rather, he issued a largely normal check-the-box mental status examination. *Id.*; *see* R. 577 (Dr. Al-Khouri opining that Plaintiff's thought process, associations, orientation, and memory were within normal limits, with average judgment/insight, logical thoughts, and coherent associations). This psychiatrist's assessment of a GAF score of 45 "does not undermine, nor is it 'significantly probative' evidence in opposition to, the ALJ's ultimate

---

[6] GAF scores represent "a clinician's judgment of the individual's overall level of functioning" at a given time. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th rev. ed. 2000) [hereinafter *DSM*]. The scores are arranged on a 100-point scale, with a score between 41 and 50 indicating "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Id.* "The most recent edition of the *DSM* omits the GAF scale 'for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Richards*, 640 F. App'x at 791 (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).

conclusions concerning the seriousness of claimant's mental status or ability to work." *Lopez*, 78 F. App'x at 678 (quoting *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001)) (discussing a GAF score assessment of 40); *accord Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (noting that while a GAF score of 50 or less suggests "an inability to keep a job," the claimant's impairment "might lie solely within the social, rather than the occupational, sphere"); *cf. Butler v. Astrue*, 412 F. App'x 144, 146-47 (10th Cir. 2011) ("[B]ecause the GAF scores at issue were not linked to any work-related limitations, they are not particularly helpful.").

In sum, the ALJ sufficiently and appropriately considered these nontreating psychiatrists' opinions, and Plaintiff has not shown that reversal is required.

### iii. Dr. Stephanie Crall

Plaintiff next asserts that the ALJ "did not seem to care that" consulting psychologist Dr. Crall diagnosed Plaintiff with depression and that Dr. Crall's opinion "opposed the ALJ's finding of nonseverity for mental health" such that the ALJ "had to provide specific, legitimate reasons for rejecting her opinion or it was error." Pl.'s Br. at 5, 7-8 (citing *Chapo*, 682 F.3d at 1291).

Dr. Crall examined Plaintiff one time for purposes of her disability benefits applications. *See* R. 556-62 (Ex. 6F). Dr. Crall opined:

> [Plaintiff's] ability to engage in work-related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and some complex tasks. In the opinion of this evaluator, functional limitations were more likely due to physical rather than to mental impairments.

R. 559.

The ALJ discussed Dr. Crall's evaluation in detail, including her diagnoses of depression and cannabis abuse. *See* R. 22-23 (citing Ex. 6F), 559. Plaintiff offers no support for the suggestion that the opinion of Dr. Crall as quoted above impels a finding of a severe mental impairment, such that the ALJ's nonseverity finding "opposed" it. *See* R. 27. *See generally* 20 C.F.R. §§ 404.1520(c), .1521, 416.920(c), .921; *Walters*, 604 F. App'x at 648. Nor does Plaintiff offer support for the suggestion that this opinion by Dr. Crall impels the inclusion of a limitation in the RFC that was omitted by the ALJ. Although the ALJ did not expressly assign a weight to Dr. Crall's opinion, the ALJ nearly verbatim adopted that opinion, finding that Plaintiff retained the ability to "perform simple and some complex tasks (functional limits due to physical rather than mental impairments)." R. 28.

Accordingly, Plaintiff has not shown that the ALJ actually rejected any opinion of Dr. Crall's, and thus Plaintiff has not shown that the ALJ was required to provide any specific, legitimate reason for doing so. Any error in the ALJ's failure to expressly assign weight to this opinion is therefore harmless. *See Keyes-Zachary*, 695 F.3d at 1165; *Howard*, 379 F.3d at 947.

### iv.     Summary

For all of these reasons, Plaintiff has not shown that the ALJ's evaluation of her mental impairments or the ALJ's RFC determination is the product of legal error or is unsupported by substantial evidence.

III.    The Cumulative Effect of Plaintiff's Impairments

Finally, Plaintiff argues that "the ALJ's decision does not indicate that he considered the combined effect of [Plaintiff's] impairments" at step two, as required by 20 C.F.R. §§ 404.1523 and 416.923.  Pl.'s Br. at 11.  As explanation for this contention, Plaintiff merely states, "Simply, [the ALJ] did not or this Court would have seen evidence of same in his opinion."  *Id.*

To the contrary, the ALJ specifically explained in his written decision that at step two he considered Plaintiff's impairments both separately and in combination.  *See, e.g.*, R. 19 (ALJ stating that he "must determine whether the claimant has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe'" at step two), 27 (considering Plaintiff mental impairments "singly and in combination" at step two).  Plaintiff offers no reason to find otherwise beyond her dissatisfaction with the result.  *Cf. Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (rejecting claimant's argument that ALJ did not consider combined effect of impairments when ALJ addressed "various impairments" and appellate court found "nothing to suggest they were not properly considered"); *Wall*, 561 F.3d at 1070 ("Where . . . the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word." (alteration and internal quotation marks omitted)).

RECOMMENDATION

For the reasons stated herein, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by January 19, 2017. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 5th day of January, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE